Gaston, J.
 

 The plaintiff in his bill, which was filed on the 2d of March, 1839, charges that the late James Parker, of Wayne county, died on the 16th of March, 1818, leaving the plaintiff, his only child, anda widow, Tabitha Parker, the
 
 *382
 
 mother of the plaintiff; that some three or four years before ^ death of the said James, being perfectly solvent and desirous to secure to the plaintiff, by way of advancement, a p0rtj0£1 0f his property, he executed unto the plaintiff, then an infant of tender years, a deed of gift for several negro slaves, named Annaky, Hannah, Mima and George; that the said deed was attested by two witnesses, Henry Hobson and Richard Grant, and was delivered to the said Hobson for the use of the plaintiff; that one of these witnesses, Hobson, died in the life-time of the plaintiff’s father; that the said deed was never registered, but has been fraudulently suppressed or destroyed; that, thirteen or fourteen years after the death of the plaintiff’s father, the plaintiff’s mother intermarried with the defendant, and that in the month of December, 1837, she died; and that, since her death, the plaintiff for the first time heard of the deed of gift aforesaid, Grant, the surviving witness thereto, having, at the earnest request of his said mother, concealed from him the knowledge thereof so long as she lived. The plaintiff charges that, upon the marriage of his mother with the defendant, the said negroes or some of them and the issue thereof came into the defendant’s possession, who had personal knowledge, orthe means ofpersonal knowledge, of the existence and suppression of said deed, and prays that the defendant may answer all the matters charged in the bill, and that the plaintiff may have such relief as the nature of his case requires.
 

 The defendant states, in his answer, that he intermarried with the mother of the plaintiff on the 20th of February, 1831; that she was then possessed of three negroes, viz. Annaky and Mima, named in the bill, and Handy, a child of Mima, holding and claiming the same as her absolute property; that Mima has since had several children, the names and ages of which he sets forth; and that the defendant has continually held the said Annaky, Mima and Handy, from the time of his said intermarriage, and the children of the said Mima, from the time they were born, as his absolute property; and that, until the month of December, 1838, he, the defendant, never heard of any deed of gift having been executed, or having been alleged to be executed by the late
 
 *383
 
 James Parker to the plaintiff. The defendant denies that such a deed ever was executed, and declares that the plaintiff shortly after the death of the plaintiff’s mother, claimed the negroes in question, as having been bequeathed to him by his father’s will, and afterwards, on finding that this claim could not be enforced, set up the unfounded claim brought forward in his bill. The defendant further alleges that the plaintiff’s father, by his last will and testament, bequeathed the negroes Annaky and Mima to the plaintiff; that the said will, after the death of the testator, was duly proved, and the widow dissented therefrom; that she afterwards filed her petition against the administrator with the will annexed, in order to obtain so much of the testator’s estate as would make the provision for her, in' the will, equal to the slaves to which she would have been entitled of said estate, in case her husband 'had died intestate; that upon said petition she obtained a judgment for the sum of six ‘ hundred dollars, or thereabouts; that execution issued upon said judgment, which ivas levied upon the slaves Annaky and Mima; and that, ata sale made by the sheriff in pursuance of the said execution, she purchased Annaky and Mima; and that, after said sale, Handy, the' child of Mima, was born. The defendant also avers that the plaintiff, at the time of filing his bill, was upwards of thirty years of age, and insists that the defendant has title to the said Annaky, Mima, Handy and the issue born since of the said Mima,’ not only by virtue of the purchase aforesaid by the said widow and his subsequent intermarriage with her, but because of her and his long continued adverse possession thereof; and prays to have the benefit of the act of Assembly made to quiet title to slaves in those who have been in possession for three years or more, and also the benefit of the act limiting the time of bringing personal actions.
 

 To this answer there is a general replication.- The first question presented upon these pleadings is, whether there was in fact such a deed of gift executed to the plaintiff by his father, as is charged in the bill. In support of this allegation, the plaintiff mainly relies on the testimony of Richard Grant. The substance of his testimony is, that he
 
 *384
 
 and Henry Hobson were witnesses to a deed of gift from the ~late Janes Parker to the plaintiff, his child and only child, for a tract of land bought from William Grant called the Walnut Hill plantation, a negro woman named Annaky, a negro child Hannah, another named George, and another named Mima, and a horse and saddle, so far as he recollects; that this deed was delivered to Hobson for safe keeping for the benefit of the plaintiff; that,' about two years after the death of Jame's Parker, hi's widow, who was the half sister of the witness, shewed the deed to a lawyer, who died before the institution of this suit, and was told by him that if the deed came to light she could not keep the negroes another day; that she, on the same day, consulted with the witness what she should do with the deed, and he told her that it was “ best perhaps not to destroy said deed;” that she observed to the witness that she had his child to raise, and that it was as much for his interest as hers to destroy it; that in his presence, accordingly, she burned the deed, and requested him to say nothing about the deed, and that he never did until after her death. He adds that, on One occasion after her marriage, she wanted him to state the case to a lawyer, in order to learn whether the deed of gift would hold the negroes, Or whether they Would belong to her husband; but does not Say whether he complied with this wish, The plaintiff also relies on the'
 
 testimony
 
 of
 
 Sally
 
 Burn and Jesse Anderson. The former states that she had
 
 repeatedly,
 
 in James Parker’s life time, heard him say that he had given to his son a deed of gift for Annaky and her children; that she had heard Henry Hobson say he had written the deed; that she had heard Mrs. Parker say, after her'first husband’s death, there was such a deed; that Parker told her the cause of his giving the deed “ was to quiet the fears of his wife, lest he should give the negro Chaney to his illegitimate child, Smithy Grant”; and thrt she has heard the plaintiff speak a-» bout this deed while his mother was alive, and that the negroes were always called his. Jesse Anderson deposes that he has heard the plaintiff’s mother speak of the little negroes she had, as being raised by her for the benefit of her son; that on one occasion, when a negro child was born, she told him
 
 *385
 
 to go and look at his little negro: that on one occasion, alter she was married to the defendant, the plaintiff whipped' some of them, and she said she had a good mind to send them home to him, as she was unfit to raise them; and that he has repeatediy heard the plaintiff claim the negroes as being his
 
 at his mother’s death.
 

 On the part of the defendant, a number of witnesses testi.fy that the general character of the witness Grant as to veracity is so bad that he is undeserving of credit upon oath. The plaintiff has attempted to meet this testimony by that of others, who declare that for ought
 
 that they
 
 know, they would believe him, but who at the same time admit that his general character is such as is represented by the discrediting witnesses.
 

 It appears from an exhibit introduced by the defendant, that' the will of James Parker and a codicil thereunto annexed were proved at the August Term, 1819, of Wayne County Court, and administration with the will annexed granted to Henry Roberts, and that the dissent of the testator’s widow from the said will was entered of record. By the said will which was witnessed by Henry Hobson, who appears to' have been dead at the time of the probate, the testator gives all his lands to his son, bequeaths to him four negroes, Annaky, Hannah, Mima and George, with an exception, that his* wife shall have the use thereof until his said son shall arrive at twenty one years of age or marries; bequeaths to' her one horse, a riding chair, and harness, leaves to her for' life only a still and a beaufet and during her widowhood a mahogany table and desk — and he bequeaths to Smithy Grant five dollars. The will bears date the 22nd December,-1809. By the codicil, which is dated on .the 7th of January, 1815, to which Hobson is not a witness, the testator further bequeaths to his said son one negro girl named Chaney and her increase. It also appears from the same exhibit' that the* widow did file a petition and obtained a judgment, as set forth in the answer, and it is testified by James Roberts, the administrator with the will annexed, that she purchased An-* naka and Mima at the sheriff’s sale under the execution, which issued to enforce the collection of that judgment. Ac
 
 *386
 
 cording to the testimony of
 
 all
 
 the witnesses, the plaintiff arr*vec* at ^ age ak°ut the year 1828, and he has always lived in the immediate neighborhood of his mother. It isprove¿ py Lot Hays, John Roberts, John B. Crawford, Major Uzzell, Bright Best and Henry Sasser, that the plaintiff’s mother, since her purchase of Annaky and Mima, and the defendant Hinson, since his intermarriage with her, held undisputed, open and notorious possession of the said Annaky and Mima, and of the issue of Mima from their birth, claiming the same as their property; and that, until after the death of Mrs. Hinson, neither they nor any of them ever heard of the alleged deed of Gift, or of any claim or pretence of claim of the plaintiff to any of these negroes. Crawford testifies that in 1828 or 1829, the plaintiff’s mother being then a widow, made a will, disposing of the said negroes, and that the plaintiff complained of that disposition in regard to Mi-ma, and thought it hard she was not given to him, as she had been by his father’s will. It is also proved that the plaintiff’s mother had negroes George and Hannah in her possession, but that she held these avowedly as the plaintiff’s negroes, ana that they have been delivered up to the plaintiff. And John Everett and Bright Best testify, that when the plaintiff, after his mother’s death, first set up a title to the negroes in dispute, he claimed them under his father’s will.
 

 Upon this view of all the material proofs in the cause, we feel ourselves boundto hold, that the plaintiff has not established his allegation, that a deed of gift for Annaky, Mima, Hannah and George was executed to him by his father. That allegation is intended to be understood, and by us must be understood, as of a deed operating directly to transfer the property from the donor to the donee, unconditionally and absolutely. The fact charged is one extremely improbable, that a man having one infant child, with a view simply to its advancement in life, should strip himself almost to destitution, retaining scarcely any property whatever either for his own support or for that of his wife, or of the children he might thereafter have. Before such a fact can be believed, the proofs must be stringent and entitled to
 
 *387
 
 to full confidence. On Richard Grant’s testimony we can place no reliance. His own tale stamps him with foul grace, in combining with a mother, by destruction of the ti-tie deed of her son and his nephew, to rob him of his ed property. But if it were not of this description, we cannot trust in him, whose character is shewn by his neighbors
 
 una voce
 
 to be that of a man regardless of all moral obligation. Throwing this testimony aside, there scarcély remains for the plaintiff any deserving of serious consideration. Mrs. Bunn proves entirely too much. She has not only
 
 repeatedly
 
 heard the late James Parker speak' of his having made a deed of gift for the negroes Annaky, Mima, Hannah arid George to the plaintiff — but has heard the plaintiff’s mother admit it — . has heard Hobson say he wrote the deed — and undertakes to give us the reason why Parker said he made the deed. It was to quiet his wife’s apprehensions lest he should give negro girl “Chaney to his illegitimate daughter Smithy Grant;” and yet. most strange! the great pnrpose contemplated by the deed is wholly unattended to, for according to the Plaintiff’s bill and the testimony of his main witness, the deed includes Annaky, Mima, Hannah and George, but does not include Chaney. But this is not all — this witness also declares that the negroes at Mrs. Parker’s and at Hinson’s were always called the plaintiff’s, and that she has heard the plaintiff himself, in his mother’s lifetime, claim them under the deed. It is charitable to presume that Mrs. Bunn speaks of the negroes or their children, which were at Mrs. Parker’s, other than Annaky, Mima, or the issue of Mima, and which were unquestionably called the plaintiff’s negroes, and perhaps charity calls upon us also to doubt whether this good lady’s memory has not been so confusedbythe multitude of communications, that have been poured into her ears by theplaintiff’s father, the plaintiff's mother,Daniel Hobson and the plaintiff himself, that at length she has fancied that the gift which in truth was made was a gift by deed, and not a gift by will. Upon examining the will, we shall see that it does give fo the plaintiff the four negroes Annaky, Mima, Hannah and George, which, as. far as we can learn, were all that the testator then owned; that to quiet his wife’s apprehensions he cuts off Smithy
 
 *388
 
 Grant with a legacy of five dollars, and that afterwards when C'baney is born, he gives her also to the plaintiff by the codicil. It is not necessary to comment upon that part of the witnesses testimony, which declares that the plaintiff, in his mother’s lifetime, talked about and claimed under this deed. This representation is repudiated by the whole frame of the .plaintiff’s bill, is contradicted by a number of witnesses, and tends further to shew that she had mistaken the
 
 will
 
 for a
 
 deed.
 
 As to the deposition of Jesse Anderson, before we allow to it
 
 any
 
 force, it becomes indispensable to ascertain whether the little negroes spoken of in it were Mima’s children — or the children of a mother indisputably belonging to the plaintiff. Th§re is nothing in the deposition or in the other proofs of the cause to enable us to solve this doubt.
 

 Without examining the grounds of defence, specially taken by the defendant, we must dismiss the bill, because of a failure to prove the case therein made. And as the claim of the plaintiff is founded upon an unsupported charge of fraud, we hold ourselves bound to dismiss the bill with costs.
 

 Per Curiam, Bill dismissed with costs,